The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* F. W. WOOLWORTH Co. (No. 3496) [1]

United States Court of Customs and Patent Appeals, May 2, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.
*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellee.
*Lamb & Lerch* (*John G. Lerch* of counsel), *amici curiæ*.

[Oral argument April 14, 1932, by Mr. Lawrence, Mr. Sharretts, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of so-called spring daggers, was assessed for duty by the collector at the port of New York as toys at 70 per

---

1 T. D. 45681.

centum ad valorem under paragraph 1513 of the Tariff Act of 1930, the pertinent part of which reads as follows:

* * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

The importer protested, claiming that the merchandise was properly dutiable as "side arms" at 50 per centum ad valorem under paragraph 363 of that act, which reads—

PAR. 363. Sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal, 50 per centum ad valorem.

The Government submitted no evidence. The two witnesses who testified for the importer said that they had seen articles like those here involved used on the stage as substitutes for daggers in stabbing scenes in comedy, dramatic, and operatic acts.

The witness Laurent Beineix said that he did not know whether the involved articles had any value as offensive or defensive weapons, and that he had never seen them played with by children.

The witness Alexander J. Sabo, however, testified that the involved articles were valueless as offensive or defensive weapons.

The court below, in an opinion by Sullivan, J., accurately described the involved articles, of which Exhibit 1 is illustrative, as follows:

The official sample, Exhibit 1, simulates a dagger. Its entire length is 7 inches. The handle or hilt is slightly under 4 inches long, and the blade about 3¼ inches. The blade is of soft iron or tin and is easily bent. On pressing the point of the blade it disappears into the handle. It reappears on the pressure being removed.

* * * * * * *

A mere ocular examination of Exhibit 1 discloses that it is without value as an offensive or defensive weapon. It is blunt and the blade can be squeezed tightly between the fingers without cutting them. The point can be forcibly pressed against the palm of the hand without breaking the skin.

Thereupon the court discussed the evidence in the case and held that the imported articles were not "chiefly used for the amusement of children" and, therefore, were not toys within the meaning of the provisions of paragraph 1513; that they were used on the stage as imitation daggers; and that, in view of the language "irrespective of quality or use," contained in paragraph 363, the term "side arms" included the involved articles, regardless of the fact that they were not weapons, and, accordingly, sustained the protest.

In the case of *American Express Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 312, T. D. 32049, two importations of bayonets were under consideration, and, in holding them dutiable as "side arms," some under paragraph 154 of the Tariff Act of 1897, and others under

paragraph 153 of the Tariff Act of 1909, which paragraphs read, respectively, as follows:

154. Swords, sword blades, and side-arms, thirty-five per centum ad valorem.
153. Sword blades, and swords and side arms irrespective of quality or use, in part of metal, fifty per centum ad valorem,

this court quoted with approval definitions of the term "side arms" as follows:

Standard Dictionary:

Weapons worn at the side, as swords, pistols, bayonets, etc., especially swords.

Webster's Dictionary:

Weapons worn at the side, as sword, bayonet, pistols, etc.

Century Dictionary:

Weapons carried by the side or at the belt, in contradistinction to musket, lance, etc.

Encyclopedia Britannica:

Side arms are those which, when not in use, are worn at the side, e. g., daggers, swords, bayonets.

In the case of *United States* v. *Hori Bros.*, 19 C. C. P. A. (Customs) 108, T. D. 45244, this court, in considering the scope of paragraph 363 of the Tariff Act of 1922, which reads—

PAR. 363. Sword blades, and swords and side arms, irrespective of quality or use, wholly or in part of metal, 50 per centum ad valorem,

reviewed the legislative history of that paragraph and, with reference to the language "irrespective of quality or use," contained therein, said—

* * * that it mattered not how good or how bad the sword or side arm might be, or how it might be used, *if it was a sword or side arm at all*, it was embraced *within this paragraph.*

* * * * * * *

It should not be understood that this court is here holding that any article which may be denominated a sword or side arm is, perforce, to be so classified. The question as to the real character of an article is always open to investigation, and subject to proof. (Italics ours.)

It will be observed that the provisions of paragraph 363 of the tariff act of 1930 are substantially the same as those in paragraph 153 of the act of 1909 and those of paragraph 363 of the act of 1922. Furthermore, the common meaning of the term "side arms" has not changed since the decision in the case of *American Express Co.* v. *United States, supra.*

A dagger is—

A short edged and pointed weapon, fitted primarily for stabbing; a general term covering the dirk, stiletto, poniard, etc.—Funk & Wagnalls' New Standard Dictionary.

The term "weapon" is defined by the same authority as "Any implement or mechanism used for offense or defense in war or single combat * * *."

It is obvious that the involved articles are not daggers, nor are they weapons of any kind. They but simulate daggers and are, therefore, not "side arms" within the common meaning of that term.

It was incumbent upon the importer not only to prove that the collector's classification was wrong, but that the classification claimed by it was right.

In view of the fact that the involved articles are not "side arms" within the common meaning of that term, and as there is no evidence of commercial designation, the importer failed to meet the burden of proof imposed upon it. Accordingly, the court below *erred* in sustaining the protest.

In so holding, we do not mean to be understood as expressing an opinion as to the proper dutiable status of merchandise like that here in question.

The judgment is *reversed*.